UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CR NO: 06-05-01-S |
| | : |
| BOBBY SOUNDARA | : |

**GOVERNMENT'S MOTION FOR UPWARD DEPARTURE**

The United States hereby moves for an Upward Departure for the reasons stated in the attached memorandum of law.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/Richard W. Rose______

RICHARD W. ROSE
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001 (fax)
email: richard.rose@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that on this 28th day of August, 2006, I caused the within Government's Motion For Upward Departure to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF system. The following participant has received noticed electronically and by fax:

William C. Dimitri, Esq.
462 Broadway
Providence, RI 02909

I further certify that I caused a copy to be mailed by regular mail and fax to:

Robert E. Craven, Esq.
50 Park Row West, Suite 100
Providence, RI 02903

Kristin A. Mattias
U.S. Probation Officer
U.S. Probation Office
36 Exchange Terrace
Providence, RI 02903

/s/Richard W. Rose
Richard W. Rose
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR NO: 06-05-01-S |
| | : | |
| BOBBY SOUNDARA | : | |

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR UPWARD DEPARTURE AND SENTENCING MEMORANDUM**

## I. INTRODUCTION

On June 2, 2006, the defendant, Bobby Soundara and his codefendant, Vanhhatdy Souvannaxab, pled guilty to a two count indictment charging them with knowingly possessing an unregistered pipe bomb in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 (Count I) and with damaging a building by fire which resulted in personal injury, in violation of 18 U.S.C. §§ 844(i)(Count II).

This memorandum is in support of a motion for an upward departure based primarily on the extent of the victim's injuries and a response to the defendant's sentencing memorandum.[1] It is also notice of the government's intention to present a witness or witnesses at the sentencing hearing to establish the nature and extent of the defendant's gang affiliations and rivalries.

[1]Two other grounds may exist for an upward departure though the government is pressing neither. See USSG § 5K2.3 (Extreme Psychological Injury ) and § 5K2.5 (Property Damage or Loss). The Court may wish to revisit the Psychological Injury provision after the victim presents her allocution at sentencing.

## II. FACTS

On September 11, 2005, at approximately 2:00 a.m., several members of the Laos Pride street gang, traveling in three cars, went to the home of Samang Tep located at 1 West Harry Street, Cranston, RI. Tep was a member of the rival Young Bloods street gang. Among the Laos Pride members present in the caravan were defendant Bobby Soundara and co-defendant Vanhhatdy Souvanaxab. Tep lived at 1 West Harry Street, Cranston, RI.

When the Laos Pride gang arrived at the West Harry Street home defendant Bobby Soundara took a homemade pipe bomb, lit the fuse, and threw the bomb through the first floor window. At the time, Soundara knew that the house was the home of Young Blood, Samang Tep. Tep was not home, however. In the house were Tep's mother and Mrs. Tep's grandchild. Awakened by the sound of breaking glass, Mrs. Tep approached the flaming pipe bomb just as the end blew off and caused Mrs. Tep to lose an eye. She also suffered multiple body lacerations.

Several items were seized from the scene and sent to the ATF Laboratory for analysis. These items included: a 6" long piece of galvanized pipe partially wrapped in white tape with red lettering "CRAFTED WITH PRIDE IN U.S.A."; pieces of silicone-like material; pieces of hardwood floor damaged by the explosion; a section of wall from the blast area; and wood from the exterior wall outside the blast area. In addition, a piece of silicone-like material removed from Mrs. Tep's leg was obtained from Rhode

Island Hospital and sent to the ATF Laboratory.

The ATF Laboratory determined, in common parlance, that the seized item was a pipe bomb. The ATF Laboratory found residue of a perchlorate explosive mixture ("PEM") inside the pipe. PEM is the powder commonly used in fireworks. The silicone-like material was determined to be a hot-melt adhesive. Fragments of a green pyrotechnic fuse were embedded in the adhesive.

On November 10, 2005, Bobby Soundara was interviewed by ATF. The interview was videotaped. During the interview, he admitted that he was a member of the Laos Pride street gang. He also admitted that he knew that the victim's son, Samang Tep, was a member of the rival Young Bloods. When confronted with the seized items from the search of his residence, Bobby Soundara admitted that he purchased the fireworks in New Hampshire. He also admitted his involvement in the pipe bombing. He stated, "I threw the bomb through the window." Bobby Soundara was shown a photograph of the front of the West Harry Street Home and said that this was "Sam's" house and that he threw a pipe bomb through the front window.

2. <u>Gang Affiliation</u>

The defendant is an admitted member of Laos Pride. The victim in this case is the mother of a member of a rival gang -- the Young Bloods. The government believes that an overview of the tension and history of the gangs supports its motion for an upward departure and underscores its view that a serious sentence

is warranted in this case particularly in light of statutory sentencing factors mandating punishment and deterrence. See 18 U.S.C. § 3553(a)(2)(A) and (B). It also supports the government's rebuttal to the defendant's attempts to minimize the gang related nature of the activity.

Rhode Island is not immune from the burgeoning gang problem affecting the United States. While not as severe as some Districts, it is none the less present and measurable. There are some twenty or so active gangs in the District, located chiefly, though not exclusively in the City of Providence.

Some of the names are familiar and have international affiliates, (Latin Kings, MS-13, Bloods, Crips) and others are named for a single Providence street (Hanover Boyz). Generally, gangs engage in a variety of criminal activity including drug distribution, assaults with deadly weapons, drive by shootings, and illegal weapons possession. There is no evidence that these defendant's were associated with the distribution of narcotics.

Laos Pride, also known as "LP" and "1216" has over forty members and associates. They are a "Crip" based gang which means, among other things, that they have rivalries with "Blood" gangs, including the Providence based Young Bloods, also known as "YB" and "242". (The victim's son is a member of the Young Bloods.) Defendant Soundara is an admitted member of LP. He has tattoos signifying his membership. He also has the tattoo "LOCC" on his arm. PSR @ ¶ 49. LOCC in the urban venacular

means "the most gangster you can get," a "high ranking member of a crip gang," and "crazy." See www.Urbandictionary.com. At his change of plea hearing in this matter, the defendant was observed by federal agents with "LP" written on his prison issued sneakers. The U.S. Marshals were notified and the sneakers were confiscated.

Soundara has previously memorialized his disdain for "Bloods" by chronicling a baseball bat assault which took place in Providence in a website rap song alternatively entitled "Bklood Storie" and "bklood Killa." The government intends to introduce the song at the sentencing hearing as well as background information from the FBI Special Agent who downloaded it off the internet. The same agent will present background information about Laos Pride and the Young Bloods.

## III. ARGUMENT

### A. GOVERNMENT'S UPWARD DEPARTURE MOTION

The government believes that the Probation Officer has correctly calculated the applicable advisory guideline level in this case. The defendant has a total offense level of 23 and a Criminal History Category of III. The guideline range is 57-71 months. Count II carries a statutory mandatory minimum sentence of 84 months (7 years).

For all of the following reasons, the government believes an upward departure is warranted.

1. <u>The Significant Personal Injuries In this Case Warrant An Upward Departure</u>

An upward departure is warranted where significant personal injuries result from the offense.

> If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extend to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated. In general, the same considerations apply as in §5K2.1.

USSG § 5K2.2.

The Section 5K2.1 factors referenced in the preceding guideline refer to upward departures where death results from the offense conduct. These factors are: 1) the dangerousness of the defendant's conduct; 2) the extent to which death or serious injury was intended or knowingly risked; and 3) the extent to which the offense level for the offense of conviction already reflects the risk of personal injury. <u>See</u> USSG § 5K2.1 <u>Death</u> (Policy Statement).

In assessing these factors, it is clear the victim in this case suffered a major permanent disability. It is also undisputable that the conduct in this case was gang motivated and intentional. The defendant's conduct was obviously dangerous.

There is a knowing risk of death or serious injury when one simply possesses a pipebomb, never mind where the pipebomb is lit and thrown into (at) a residence at 2:00 a.m. The only factor appearing to weigh in the defendant's favor is the extent to which personal injury is already taken into account in his guideline calculations. Here the guidelines assigned a four level increase because the possession of the pipe bomb was used in connection with another felony offense i.e., damaging a building by means of an explosive which resulted in personal injury. See PSR @ ¶ 17. This is misleading, however, because these same four levels would have been added if no personal injury had resulted because damaging a building by means of an explosive is "in connection with another felony offense" which is the thing required by the § 2K2.1(b)(5) enhancement. Thus all of the guideline factors for an upward departure are present to a substantial degree. Even conceding arguendo that the defendant didn't mean to harm anyone -- the act was so reckless and the injuries so severe, that a significant upward departure is warranted, justified, and deserving.[2]

The real question in this case is how much of an upward departure is appropriate. The government is aware of the

---

[2] The issue of whether the defendant had the specific intent to hurt someone (as opposed to his intention to commit the act of throwing a pipe bomb) is a close call. Indeed, but for its closeness, the government would be arguing that the appropriate guideline section to apply is Attempted Murder pursuant to USSG § 2A2.1 where the base offense level would be 33.

advisory nature of the guidelines and the touchstone requirement that a sentence be "reasonable." Defining what is reasonable of course has proved linguistically challenging. Cf. United States v. Jimenez-Beltre 440 F.3d 514, 519 (1st Cir. 2006) (reasonableness assumed where there is " ... a plausible explanation and a defensible overall result." ) In this case the government believes the guideline for aggravated assault is helpful. An aggravated assault carries a seven level enhancement where there is permanent bodily injury and five levels where there is serious bodily injury. See USSG §§ 2A2.2(b)(3)(B)and(C). The total offense level here is 23 (51-63). The restricted guideline sentence is 84 months. The government believes an upward departure to 120 months or five levels more than the calculated guideline range, and only three levels more than the restricted guideline range, is reasonable and just. Indeed, but for the defendant's age and lack of violent criminal record, the government's recommendation would not be as temperate as it is. Ten years is an appropriate sentence in this case.

B. GOVERNMENT'S RESPONSE TO THE DEFENDANT'S OBJECTIONS IN HIS SENTENCING MEMORANDUM

The defendant raised several objections in his sentencing memorandum. The government responds as follows.

1. Personal Background

The defendant's memorandum portrays the defendant as

misguided and remorseful, indeed a budding "architect, a responsible mentor and a beloved family member." Defendant's Memorandum, p.4. His conduct belies such a post hoc description. The defendant is a gang member who took a leadership role (he threw the bomb) and even posted his feelings on the internet stressing violence against rival gangs. The defendant strolled into Court to change his plea with his gang identifiers already adorning his prison issued sneakers.

2. Guideline Calculations

The defendant proffers a statutory construction which is unfamiliar to the government. The probation officer has correctly calculated the guidelines. Counts I and II are clearly distinct counts. The defendant's reliance on United States v. Talbot, 902 F.2d 1129 (4th Cir. 1990) is misplaced. Talbot involved whether a defendant could be sentenced beyond the statutory maximum for the possession and failure to register the same pipe bomb. The Court stated that " ... consecutive sentences may not be imposed for both possession and manufacture of a single firearm such that the total sentence exceeds the statutory maximum for one violation." Id. @ 113. Talbot involved two violations of Title 26, §5861.

The instant case is different. The defendant has pled guilty to possession of an unregistered pipe bomb (a Title 26 offense) and the use of a pipe bomb to damage a building in violation of 18 U.S.C. § 844(i). The former carriers a maximum

punishment of 10 years and the latter a maximum punishment of 40 years with a seven year mandatory minimum. It is axiomatic that Congress may punish the same conduct without violating the double jeopardy clause. Cf. United States v. Patel, 370 F.3d 108 (1st Cir. 2004)( double jeopardy did not bar imposition of multiple punishments for arson and using fire to commit mail fraud).

The defendant's objection to the guideline calculation should be denied.

3. Defendant's Downward Departure Motion is a Legal Impossibility and Factually Unsupportable.

The defendant incredibly argues that "incarceration under the statute is not mandatory." Defendant's Memorandum at p.9. The law requires that a court must impose a statutory minimum sentence unless 18 U.S.C. §§ 3553(e)or(f) applies. See United States v. Ahlers, 305 F.3d 54 (1st Cir. 2002). Neither of these sections apply to the present case. The former requires a government motion based on substantial assistance, and the latter refers to the so-called safety valve. Because the mandatory minimum of 7 years exceeds even the government and Probation Officer's projected guideline calculation (57-71) months, there is no downward departure available. Seven years is the mandatory minimum sentence in this case.

Even if it were not legally impossible, the defendant's factual arguments for a downward departure are weak. The defendant cites family bonds and responsibilities (the defendant is a mentor to his adult brother Steven), youthful lack of

guidance (an unrecognized ground for departure), aberrant act (the defendant has a criminal history category of III), and alcohol use. There is nothing about the defendant's conduct that would warrant a downward departure.

He is hardly a mentor and no unusual facts are presented in his memorandum. His family responsibilities are minimal. According to the PSR he depends on his girlfriend for financial support and he hasn't had a job for six months prior to his arrest. PSR @ ¶ 54. The most he ever earned was $5,000 in 2005. Id. His counsel is being paid for by his girlfriend. Id. His memorandum cites a youthful lack of guidance but the PSR bespeaks of an intact nuclear family but a son " ... who would make fun of [his mother] and laugh at her when she tried to set limits." Id. @ ¶ 45. There is more to be argued but nothing to be gained. A downward departure is legally impossible and factually unsupportable. The defendant's motion for a downward departure should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/Richard W. Rose
RICHARD W. ROSE
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001 (fax)
email: richard.rose@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that on this 28th day of August, 2006, I caused the within Government's Memorandum of Law in Support of Its Motion For Upward Departure and Sentencing Memorandum to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF system. The following participant has received noticed electronically and by fax:

William C. Dimitri, Esq.
462 Broadway
Providence, RI 02909

I further certify that I caused a copy to be mailed by regular mail and fax to:

Robert E. Craven, Esq.
50 Park Row West, Suite 100
Providence, RI 02903

Kristin A. Mattias
U.S. Probation Officer
U.S. Probation Office
36 Exchange Terrace
Providence, RI 02903

/s/ Richard W. Rose
Richard W. Rose
Assistant United States Attorney