IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

************************************
UNITED STATES OF AMERICA *
*
v. * CR. No. ~~05-015~~ 06-05-015
*
BOBBY SOUNDARA *
*
************************************

SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT

## I. Introduction

The Defendant, Bobby Soundara, has pleaded guilty to throwing a homemade explosive into a private residence causing injury to one of the dwelling's inhabitants. Bobby intended to throw the "pipe bomb" involved at the house in an attempt to frighten the inhabitants and cause some light damage to the façade of the dwelling, but did not intend the injuries that resulted in the "pipe bomb" crashing through a window into the dwelling. Bobby realizes his conduct was dangerous and criminal. If not for his intoxicated state, Bobby would not have participated in such conduct. His conduct has caused hardship to his family and loved ones and Bobby is both remorseful to his victim and willing to be responsible in his cooperation with this court and all parties involved to demonstrate this remorse and acceptance of responsibility for his conduct.

Therefore, as justice requires, this memorandum will discuss the sentence that is reasonable and appropriate given the nature of Bobby's conduct and circumstances.

## II. Personal Background

The Defendant, Bobby Soundara, is 20 years old, a young man with the whole of his adult life ahead of him. Bobby's childhood began in Modesto, California, where his working class family possessed a semblance of stability. Bobby enjoyed various activities, went to school and had many friends. Unfortunately for Bobby and his family, events took a misfortunate turn when his grandfather became ill and needed his daughter's help to survive and function. Bobby's mother moved in with her father in Rhode Island to assist in his convalescence. By the time Bobby's grandfather passed away, the family had moved to Rhode Island because it could not financially survive on two coasts.

Following the passing of Bobby's grandfather, his parents lacked the finances to move back home to California and were forced to stay in Rhode Island where the cost of property and survival was higher than in Modesto. The family struggled. The neighborhood the Soundaras found themselves in was not what they were accustomed to; and the highest price may have been paid by the Soundara children. In their Rhode Island neighborhood, there were very few opportunities to flourish artistically as well as educationally. Most of the children in the neighborhood were struggling educationally and many were in gangs. Bobby's parents worked as hard and as much as possible to keep the family unit afloat, leaving Bobby and his brother to themselves. Bobby had little support at home because his parents had little opportunity to offer it.

As a result, Bobby made mistakes. He fell in with the neighborhood kids who offered friendship to him and demonstrated a level of acceptance he did not find elsewhere. As it turned out, many of these friends were either street-gang

members or aspired to be so. Bobby had little interest in street gangs but he craved the friendship and attention he enjoyed with these other young men. So, Bobby's interests mirrored those of his friends. School was not among them. Bobby dropped out of school at age 15 and soon after, late-night parties, alcohol binges and neighborhood tough-talk became his new routine. Bobby was living a life split between two worlds.

When not in the world of his friends, Bobby was developing strong relationships. Bobby is close to his parents, especially his father. Responding to his father's needs emotionally and the family's needs financially, Bobby contributed much of the income he earned at his various jobs to help support the family. Bobby also has a close relationship to his nephew and his brother, Steven. While struggling with his outside activities, Bobby was striving to be a positive role model to his brother. Like Bobby, Steven has dealt with conflicting influences and would rebel occasionally against his parents. However, he would always listen and respect Bobby. Bobby has expressed that one of the many tragedies of his criminal activities is the toll it has taken on his relationship with Steven. Since his incarceration, Bobby has written to his brother but has not received any return correspondence; nor will his brother visit him where he is incarcerated. It is Bobby's sincere hope that the responsible and productive way he intends to handle himself throughout his proceedings and incarceration will repair the damage done to this relationship.

Another relationship that has been strained is between Bobby and his girlfriend, Vicki. The two met when Bobby was only 14 and Vicki 13. Vicki is a disciplined, driven and intelligent young woman, who works full time to support herself while attending classes full time at CCRI. Vicki attributes much of her success

to Bobby. The two often spoke about getting out of the neighborhood in which they lived and helping Bobby's family to do the same. Vicki has said that Bobby looked after his father, brother and her, but neglected to take care of himself. Bobby is a warm-hearted and supportive young man whose decisions caused harm to many people.

Bobby has aspirations of becoming an architect. He did not graduate from high school. However, he and Vicki had carved out the means by which he would achieve his goal. Vicki's cousin had attended a course that provided her with a high school equivalence and allowed her to attend classes at CCRI. Bobby had planned to take the same course and had communicated this intent in writing to the program. These plans have definitely been affected by the events that are the subject of this matter, but Bobby still intends to complete a course of study and become a professional.

Bobby is aware that, as he sat drinking with his friends and it was suggested that an explosive device be thrown at the house, he should have had the courage to refuse to participate. He realizes his choice was poor and people have suffered as a result. He has expressed that he would do anything to go back and make a better decision, but Bobby also knows that is impossible. So, Bobby is resolved that the only thing he can do to recover the relationships in his life is to act responsibly and courageously throughout the events to come. He believes the only way to do right by the victim of his crime is to use these events as a catalyst to become a better, vibrant, productive person – an architect, a responsible mentor and a beloved family member.

## III. Sentencing

Given the facts and circumstances of this case, the following U.S. Sentencing Guidelines calculations apply:

| | | |
|---|---|---|
| U.S.S.G. § 2K1.4 | (base offense level) | 24 |
| U.S.S.G. § 3D1.2(a) | (same victim, same harm) | 0 |
| U.S.S.G. § 3E1.1 | (acceptance of responsibility) | -3 |
| | | 21 |

As defendant's Criminal History Category is III (6 points), the reasonable sentence under the guidelines falls between 51 and 63 months. Because the statute leaves to the discretion of the court whether or not to sentence the defendant to any time at all, or merely invoke a fine, the sentencing guidelines figure is the appropriate sentence in this case.

Furthermore, a downward departure is warranted here under U.S.S.G. § 10.6 and § 5K2.0(c); the combination of relevant permitted factors work together to justify and require a lighter sentence than the statute requires. The ultimate sentence warranted in this case is more in line with the U.S. Sentencing Guidelines recommendation.

a. **Offense Level Calculation**

**Base Level Offense** – The primary crime which defendant has been charged with and has subsequently plead guilty to is 18 U.S.C § 844(i), which states:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building … used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this statute, or both; and if personal injury results to any person, … as a direct or proximate result of this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both … *18 U.S.C. § 844(i).*

Because personal injury resulted from Bobby's conduct in this case, the proper statutory range for this crime is *either* (a) imprisonment for 7-40 years, (b) a fine under the provisions of the statute, *or* (c) both a term of imprisonment and a fine.

Under the U.S. Sentencing Guidelines, this statute points to U.S.S.G. § 2K1.4, where paragraph 1 applies to Bobby's conduct, stating that the offense level should be 24 "if the offense (A) created a substantial risk of death or serious bodily injury to any person other than the participant in the offense, and that risk was created knowingly, or (B) involved the destruction or attempted destruction of a dwelling …" *U.S.S.G. § 2K1.4(1).* Bobby's conduct in throwing a homemade explosive at the exterior of a structure when no persons were outside the structure or nearby establishes that there was no intent to cause harm to any persons. But, because the results of Bobby's conduct demonstrates the act did create the risk of serious bodily injury, paragraph (1) must be applied.

Bobby was also charges with a group of weapons charges, namely 26 U.S.C. § 5841: Failure to Register a Firearm, 26 U.S.C. § 5861(d): Receiving or Possession of a Firearm, and 26 U.S.C. § 5871: Penalties. The latter section states that "(a)ny person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000 or be imprisoned not more than ten years, or both."

The federal circuits have routinely held that possession of a firearm is a common element in both the possession provision and transfer/failure to register provision of the statute, and thus the government seek separate sentences for violations of the separate sections. See U.S. v. Edick, 603 F.2d 772 (9th Cir. 1979); U.S. v. Gibson, 559 F.2d 934 (4th Cir. 1977), cert. denied 98 S.Ct. 617; U.S. v. Arrington, 618 F.2d 1119 (5th Cir. 1980); and U.S. v. Talbott, 902 F.2d 1129 (4th Cir. 1990) (consecutive ten-year sentences could not be imposed for possession of and failure to register the same pipe bomb).

Thus, only one sentence up to ten years can be imposed under the statute. Further, the element of possessing a pipe bomb is inherent in using a pipe bomb to destroy property and cause injury to persons, as evidenced by the treatment of such conduct under the sentencing guidelines. In considering closely related charges, U.S.S.G. § 3D1.2(b) points to § 3D1.3, which states:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule … (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. *U.S.S.G. § 3D1.2.*

Once the counts are grouped, § 3D1.3(a) is applied. It states:

> In the case of counts grouped together pursuant to § 3D1.2(a) – (c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the group. *U.S.S.G. § 3D1.3(a).*

Thus, the level 24 offense applied under § 2K1.4 would apply to the whole group of related counts. So, for all counts plead to, the proper base level is 24.

**Reduction of Level** – Pursuant to § 3E1.1, Bobby is also entitled to a 3-level decrease for acceptance of responsibility, as his base level exceeds 16 under paragraph (b) of this section. Bobby informed the government early in these proceedings of his intent andn desire to enter a plea of guilty and truthfully admit the conduct comprising the offense of conviction, under the applicable and relevant statute. This reduces Bobby's offense level to 21.

b. **Criminal History Category**

Pursuant to U.S.S.G. § 4A1.1(a), Bobby's prior conviction in Rhode Island state court for larceny over $500 on February 17, 2004 (P2/04-1444), creates a value of 3 criminal-history points, because the suspended sentence involved was for a period more than one year and one month (two years). Pursuant to § 4A1.1(d), two additional points are added because the instant offense was committed while on probation for this same prior crime. And, because the instant offense was committed within two years of his "release" fpr this same prior crime, an additional point is added pursuant to § 4A1.1(e).

Bobby was arrested for shoplifting in North Attleboro, Massachusetts, in 2000, when Bobby was a minor, but because this charge was dismissed by the Attleboro Juvenile Court (DL00A0013), there was no sentence to factor into Bobby's criminal history. On September 8, 2005, two misdemeanor counts against Bobby for taking a short lobster of the shore without a license were continued without a finding by the Falmouth District Court in Massachusetts (0589CR001532A). Because these charges were under the authority of the Massachusetts Fish and game Department, they could not ordinarily be applied to Bobby's criminal history for sentencing purposes, pursuant to U.S.S.G. § 4A1.2(c)(1)[1] without a period of probation in excess of one year. Because Bobby's infraction on Cape Cod drew a two-year period of probation, this charge would normally be applied to bobby's Criminal History Points.

However, this charge cannot be applied to Bobby's Criminal History Points because first, the two years probation for plucking a small lobster off of the Cape-Cod shore is

[1] U.S.S.G. § 4A1.2(c)(1) states in pertinent part: "Sentences for the following prior offenses similar to them, by whatever name they are known are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least 30 days, or (B) the prior offense was similar to the instant offense: … Fish and game violation"

shockingly excessive as it pertains to sentencing factors for a subsequent crime. Second, U.S.S.G. § 4A1.2(f) states:

> Diversionary Disposition: Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted. *U.S.S.G. § 4A1.2(f)*

As the above represents Bobby's entire criminal history, the six points created by 4A1.1(a), (d) and (e) for the larceny charge establish his total Criminal History Points. Consequently, Bobby's Criminal History Category is III. An offense level 21 under Category III reveals a sentencing range of 46-57 months.

c. **Downward Departure**

Under the statute to which Bobby has plead, the statutory range 7-10 years, if the court feels incarceration is warranted. The plain language of 18 U.S.C § 844(i) as quoted supra demonstrates that the court may elect to levy a sentence of incarceration, a fine, or both. Therefore, given the background, history and level of motive and intent to injure in this case, incarceration under the statute is not mandatory and thus, the more appropriate sentence is the recommended sentence under the U.S. Sentencing Guidelines, 45-57 months.

However, regardless of the construction the court chooses to apply, a downward departure is warranted. In determining whether a departure from the guidelines is warranted under 18 U.S.C. § 3663, a sentencing court may consider, without limitation, any and all information concerning the background, character, and conduct of the defendant unless otherwise prohibited by law. See 18 U.S.C. § 3661, U.S.S.G. § 1B1.4; see also U.S. v. Boshell. 728 F.Supp 632, 633-34 (E.D. Wash. 1990) (reconciling consideration limitations of guidelines with code). Departure from calculated sentencing ranges is permitted where

aggravating or mitigating circumstances exist which were not adequately taken into consideration by the Sentencing Commission when limiting the guidelines. 18 U.S.C. § 3553(b). Where, as here, "substantial atypicalities" are shown by the defendant, the First Circuit has recognized that downward departure is necessary to achieve the guideline goal of imposing appropriate sentences. See U.S. v. Carr, 932 F.2d 67, 72 (1st . Cir.) Cert. denied,112 S.Ct. 112 (1991) (departures permitted where "special" circumstances are found); U.S. v. Norflett, 922 F.2d 50, 54 (1st. Cir.) 1990 (departures justified by "substantial atypicalities"). Furthermore, the Supreme Court holding in U.S. v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), makes the guideline system merely advisory in nature.

The court should depart downward in this case to a sentence range that would permit a small period of incarceration followed by a period of home detention or community service. The reasons for such a departure are many but may be grouped as follows under U.S.S.G. § 5K2.0(c), which states:

> LIMITATION ON DEPARTURES BASED ON MULTIPLE CIRCUMSTANCES -- The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if – (1) such offender characteristics or other circumstances, taken together, make the case an exceptional one; and (2) each such offender characteristic or other circumstance is – (A) present to a substantial degree, and (2) identified in the guidelines as a permissible ground for departure, even if such offender characteristic of other circumstance is not ordinarily relevant to a determination of whether a departure is warranted. *U.S.S.G. § 5K2.0(c)*

**Family Bonds and Responsibility -** Pursuant to Booker, family ties and responsibility claims are not frivolous and can support downward departures. U.S. v. Antanakopoulos, 399 F.3d 68, 83 (1st.Cir. 2005). Not only is such a reduction of sentence permitted, courts have instituted such departures regularly. A 3-level downward departure was upheld due to health problems within the defendant's immediate family for which the defendant played a vital

role in providing assistance. U.S. v. Roselli, 366 F.3d 58, 70 (1st. Cir. 2004). A defendant was granted a downward departure when he was found to be an "irreplaceable" part of the treatment plan for a family member with psychiatric problems. U.S. v. Haverset, 22 F.3d 790 (8th. Cir, 1994).

In U.S. v. Sclamo, 997 F.2d 970 (1st. Cir. 1993), the First Circuit court of Appeals upheld a trial justice's downward departure where it was found that incarceration would harm the emotionally troubled child of the woman the defendant had been living with due to the close bond that existed between the two and the positive influence defendant had on the child. In the instant case, Bobby and his brother Steven have just such a bond. Steven is a young man growing up in the same environment that was such a challenge to Bobby, with the same influences. Because of the significant financial hardship that this family must face, Steven has limited contact with his parents and their influence on Steven is also limited. Bobby has always been the one person who was able to guide Steven and help him steer clear of difficulty.

Since Bobby's incarceration, Steven has become withdrawn and not only further distanced himself from his parents, but has distanced himself from Bobby as well. Clearly, Steven is confused and troubled by his mentor and big brother having committed a harmful crime. He is also profoundly troubled by not having Bobby nearby to explain himself and actively work to prevent the events of this case from pushing his brother into despondency.

The crime in this case has created several victims. First, the innocent person who directly injured by Bobby's conduct and her family and loved ones. Bobby does not wish to diminish the importance of paying his debt to his community and specifically, to this victim and those close to her. He recognizes that a debt must be paid. But, also victimized by this act are Bobby's family and loved ones, who must come to terms with his having committed

such a crime and must cope with his absence for a time. So, Bobby's parents and his long-time companion, Vicki, have suffered acutely as well. But, the heaviest blow to Bobby's loved ones has been borne by Steven.

Without Bobby's presence in Steven's life, and without his day-to-day communications and influences, there is danger that will also head into a direction similar to that of his brother. What Steven needs to witness is Bobby's proactive stance in rehabilitating himself, in taking full responsibility for his conduct, in working to improve the community and prevent further violence and in doing right by his victims. In fact, these acts are what all parties involved in this case need to see. In the end, this combination of action and conduct is what Bobby's victims want to see, what the court system wants to see and what the prosecuting government wants to see: a Bobby Soundara that pays his debt for this crime, not just by sitting in a cell for a pre-determined period of time, but one who, upon release from incarceration, is willing and able to make a positive impact on the lives of others.

A long sentence in this case will be strictly punitive and serve no other purpose. And that punishment will be suffered not only by the perpetrator of this crime but by his little brother as well. Bobby understands that it was his conduct and that conduct alone that threatens to bring harm upon his brother and family. He understands that in whatever way the court exercises its discretion, it was his conduct and not that of a sentencing justice that has brought this harm. It is simply his request that the court consider such harm in exercising such discretion, as it has a Constitutionally-vested right to do.

**Youthful Lack of Guidance** – Although such argument is not, of itself, a reason for downward departure, it should be considered a compounding factor in analyzing the other

arguments made above. Further, it is not without precedent to depart downward in consideration of a defendant's demonstrated intention to overcome such difficulties. In U.S. v. Redriguez, 224 F.Supp. 1118 (S.D.N.Y. 1989), the court departed downward on the basis of defendant's desire to rehabilitate himself and become a responsible citizen and family member. Bobby Soundara is very eager to atone for his conduct by educating himself so that he can become a positive influence on and productive member of his family. He is eager to work with others in communicating the dangers of alcohol among young people and the risks of violent conduct inherent in certain communities and how to avoid them. In this way, Bobby can also do right by his victim and his community. While sitting in a cell, Bobby can only pay, he cannot atone.

**Aberrant Act** – It should also be considered that there are no other acts of violence or harms against the person in Bobby's past. Certainly, this fact alone likely does not warrant a downward departure, nor does it reduce the seriousness of his single violent act. But, Bobby's other crimes were of a wholly different nature and character that the one that brings him presently before the Court. He unlawfully took some goods on one single occasion and plucked a small lobster from the Cape-Cod shoreline on another. Bobby has never repeated an offense. Further, these are not the crimes of a career criminal or an inherently dangerous person.

**Alcohol Use and Intoxication** – Again, although this is not reason for any sentence reduction in itself, Bobby's excessive use of alcohol on the night in which he committed this act should be a consideration. Someone provided Bobby, well under the age of 21 at the time, with significant quantities of alcohol on the night of this crime. The very reason that

governments set age restriction on the purchase and consumption of alcohol is that it is understood that persons under this age cannot be expected to make rational decisions as to the use of alcohol, and once intoxicated, are less likely to act responsibly and control their behavior. Further, in looking at the factors described herein, there is a but-for causal connection between Bobby's alcohol use/abuse and his conduct on the night he committed this crime. Bobby is, by all accounts among those who know him well, a sensitive and loving young man. Without being intoxicated, Bobby would never have committed this act. Obviously, Bobby drank the alcohol voluntarily and it makes no sense to claim otherwise. But, what also makes no sense whatsoever is for a government to bar the use of a chemical by certain age groups due to its effects on behavior and this age groups ability to make reasonable choices and then, when a member of this age group is unlawfully provided this chemical and the effects on his behavior, predictably cause him to do harm, the same government fails to consider this to be a factor in a young person's behavior.

The alcohol use, the fact that Bobby has never committed an act of violence prior to this act, Bobby's limited supervision, the lack of realistic choices within Bobby's immediate environs and the impact of a long period of incarceration would have on Bobby's brother work in combination pursuant to U.S.S.G. § 5K2.0(c) to warrant a downward departure of Bobby's sentence. The sentence that would best serve the interests of his community and his supervising government, would be a shorter term of incarceration, followed by a period of supervised and conditional probation, during which Bobby would be required to participate in court-ordered education, rehabilitation and community service.

Respectfully Submitted,

Robert E. Craven, Esq. (#2938)
Attorney for Bobby Soundara

**CERTIFICATION**

I hereby certify that a true copy of the within was sent to Richard Rose, Assistant U.S. Attorney General at 50 Kennedy Plaza, 8th floor, Providence, RI 02903 on this 22 day of August, 2006.